No. 45,260

R. Rex Lee, *Appellant*, v. Mobil Oil Corporation, a Corporation, and Mobil Pipe Line Company, a Corporation, *Appellees*.

and

Smitherman Oil Company Incorporated, a Corporation, Willis Ecton, Barbara Ecton, Raymond Moore, Alpha Moore, Newell B. Hoover, Cora Hoover, Kenneth Plummer, Doris Plummer, H. E. Tway, Lula Loyd Demoss, Betty Payton, Joyce N. Tharp, Keith Payton and Thomas H. McCallum, *Appellants,* v. The City of Augusta, Kansas, Defendant; Mobil Oil Corporation, a Corporation, and Mobil Pipe Line Company, a Corporation, *Appellees*.

(452 P. 2d 857)

Opinion filed April 12, 1969.

*Leonard F. Watkins, Jr.,* of El Dorado, argued the cause and *Walter F. McGinnis* and *Allyn M. McGinnis,* both of El Dorado, were with him on the brief for appellants.

*Clifford L. Malone,* of Wichita, argued the cause and *Donald G. Canuteson,* of Dallas, Texas, *J. William Dalgetty,* of Kansas City, Missouri, *Mark H. Adams, Charles E. Jones, William I. Robinson, J. Ashford Manka, Mark H. Adams, II, John S. Seeber, Floyd E. Jensen, Philip L. Bowman, Robert Hall* and *Joe Rolston,* all of Wichita, were with him on the brief for appellees.

The opinion of the court was delivered by

FROMME, J.: This appeal is from two summary judgments entered in favor of defendants, Mobil Oil Corporation and Mobil Pipe Line Company, in two separate cases. The cases were consolidated by stipulation before the appeals were docketed in this court. (See Rules of the Supreme Court, 197 Kan. LXVII, Rule No. 13 (*a*).)

These cases are presented for review on one record. The decision here will determine the appeal in each case. (Case No. 28,314 and Case No. 28,329 in the District Court of Butler County, Kansas.) The claims for relief arose during a flood which occurred on June 5, 1965, at Augusta, Kansas.

The plaintiffs filed separate petitions claiming relief in damages against the defendants. In each case they allege the defendants stored upon their premises certain dangerous substances, *i. e.* oil and acid, which were used in operating a refinery near the city of Augusta. They further allege defendants negligently permitted or caused these dangerous substances to be released from storage facilities located at the refinery. They allege these substances came upon the property of the plaintiffs causing damages to plaintiffs' real and personal property for which defendants are strictly liable. A demand for jury trial was filed with each petition.

The defendant corporations did not file answers. No pretrial discovery depositions were attempted. The defendants filed motions for summary judgment in both cases stating there was no genuine issue as to any material fact. They asked for judgment as a matter of law. In support of these motions they attached six affidavits. Counter affidavits were filed by plaintiffs. The court granted summary judgment in each case in favor of the defendants.

Without detailing defendants' affidavits they generally tend to support the defenses which defendants argue before this court, *i. e.* (1) plaintiffs' damages were caused by an "act of God", an unprecedented flood, and, (2) defendants did not permit or cause dangerous substances to be released.

As previously stated, plaintiffs filed counter affidavits. These affidavits generally tend to indicate oil and acid coming from the refinery area were carried on the flood waters and damaged plaintiffs' property.

Maps and certified weather bureau reports were filed by defendants. These indicate the area affected by the flood is located between the Walnut and Whitewater rivers at Augusta, Kansas.

They indicate the flood crest on the day in question was several feet higher on the Walnut river than on previous occasions and the flood crest on the Whitewater river was less than on its previous high crest in 1944.

The motions for summary judgment were sustained in both cases on the basis of the facts contained in these affidavits, maps and weather bureau reports. The court made a finding there was no genuine issue as to any material fact remaining in controversy because the occurrence giving rise to the claims was due to an unprecedented flood, an "act of God", for which defendants were not responsible.

The plaintiffs now challenge the lower court's judgments on two grounds. *First,* an "act of God" is no defense to claim based on the theory of strict liability and, *second,* there were genuine issues of material fact unresolved.

The plaintiffs' first claim of error is premised on too broad a statement of the law. Our cases recognize the theory of strict liability which had its birth in *Fletcher v. Rylands,* L. R. 1 Exch. 263, but the doctrine has certain limitations and consequences. (See *Helms v. Oil Co.,* 102 Kan. 164, 169 Pac. 208; *Berry v. Shell Petroleum Co.,* 140 Kan. 94, 33 P. 2d 953; *State Highway Comm. v. Empire Oil & Ref. Co.,* 141 Kan. 161, 40 P. 2d 355; *Klassen v. Creamery Co.,* 160 Kan. 697, 165 P. 2d 601.)

Generally, strict liability is confined to those consequences which lie within the extraordinary risk created. The requirement of foreseeability of the consequences places a limitation on the liability. When harm results from the intervention of an unforeseeable force of nature liability does not fall on the defendant. The proximate or direct cause of plaintiffs' damage stems from the intervening cause. (*Gerber v. McCall,* 175 Kan. 433, 264 P. 2d 490; *Fairbrother v. Wiley's Inc.,* 183 Kan. 579, 331, P. 2d 330; see also *Prosser, Law of Torts* [2nd Ed.], *Extent of Liability,* p. 338.)

Whether a flood is an "act of God" as known in the law depends upon the character and extent of the flood. Not every flood is an unforeseeable intervening force of nature. An "act of God" as known in the law is an irresistible superhuman cause, such as no reasonable human foresight, prudence, diligence and care can anticipate and prevent. (*Garrett v. Beers,* 97 Kan. 255, 155 Pac. 2; see also *Fairbrother v. Wiley's Inc.,* supra; 1 Am. Jur. 2d, Act of God § 3, p. 678 and 1 C. J. S., Act of God, p. 1425.)

In *Garrett v. Beers,* supra, it is said:

". . . There was testimony that the May flood in 1910 which caused the damage was not unprecedented; that 'many a time' such heavy rains had fallen before. Clearly this was a question for the jury. . . ." (97 Kan. p. 258)

In the present case the flooding occurred at the confluence of the Walnut and Whitewater rivers. The weather bureau charts seem to indicate the crest on the Walnut was higher than at any previous time, while the crest on the Whitewater was below the previous high in 1944. Whether this particular flood constituted an "act of God" as known in the law is a question of fact for the jury.

Under the allegations in the petitions defendants are charged with negligently permitting or *causing these dangerous substances*, oil and acid, *to be released* from storage facilities. If these allegations are true the negligent acts of the defendants may have continued after the flooding began in the refinery area. The affidavit of the refinery manager indicates flood waters were coming into the refinery when he recommended the plant be shut down.

Plaintiffs argue that defendants in shutting down the refinery released oil and acid into the flood waters and these were carried onto plaintiffs' property. The defendants argue that no oil or acid was released. This remains an issue between the parties.

An "act of God" to be a defense must be an intervening cause which was not foreseeable and the consequences of which could not be prevented. If the defendants released these substances into the flood waters the flood was not an intervening cause. The release of these substances if intentional and contemporaneous with the flooding would be the direct cause of the damages. The flood in such case may have contributed to the damage but defendants would not be relieved of liability. The consequences of their acts were foreseeable.

The questions of foreseeability and causality are questions of fact for the jury. (See cases 4 Hatcher's Kansas Digest, [Rev. Ed.] Negligence § 74.)

Under the posture of these cases at the time motions for summary judgment were filed the cases were not ripe for summary judgments. The attack upon the petitions is not because of insufficiency of their allegations. Defendants were attempting to present and resolve issues which should have been presented by answer. (See K. S. A. 60-208 (*b*) and (*c*).)

Ordinarily a motion for summary judgment should not be granted

before the issues are made up and so long as pretrial discovery remains unfinished. (*Brick v. City of Wichita*, 195 Kan. 206, 211, 403 P. 2d 964.)

On the hearing of a motion for summary judgment there should be no attempt to resolve conflicting questions of fact. (*Schneider v. Washington National Ins. Co.*, 200 Kan. 380, 387, 437 P. 2d 798.) The party who moves for a summary judgment has the burden of establishing without a doubt there is no genuine issue of fact. Any doubt as to the existence of such an issue must be resolved against the movant. (*Herl v. State Bank of Parsons*, 195 Kan. 35, 37, 403 P. 2d 110.)

A summary judgment proceeding is not a trial by affidavits, and the parties must always be afforded a trial when there is a good faith dispute over material facts. (*Brick v. City of Wichita*, supra.)

Whether a particular flood is of such extraordinary and unprecedented nature as to constitute an "act of God" is a question of fact for the jury. (*Garrett v. Beers*, supra.)

The question of foreseeability and causality of a claimed intervening cause ordinary rests in the province of the trier of the facts. (*Secrist v. Turley*, 196 Kan. 572, 412 P. 2d 976.)

The present motions were submitted to the trial court before answers were filed and before pretrial discovery was finished. Issues of fact should not be made up between the parties on affidavits.

Two cases heavily relied upon by defendants should be distinguished. The defendants submit the flood was an "act of God", an intervening cause, which on the basis of *Gerber v. McCall*, supra, relieves any liability arising from the escape of oil and acid from defendants' premises. In *Gerber* it was admitted the flood was an "act of God". The plaintiffs there contended their damages "were the result of an act of negligence cojoined with an Act of God, which combined to produce the resulting damage". When all parties admit a flood is an "act of God" as known in the law it no longer remains a material fact in issue.

The defendants contend the case of *Zampos v. United States Smelting Refining and Min. Co.*, 206 F. 2d 171 (C. A. 10, 1953) is authority for upholding the summary judgments in the present cases. In *Zampos* the defendant filed answer pleading the defense of intervening cause, "act of God". Pretrial discovery was completed and depositions as well as affidavits were used to pierce the

formal allegations of the petition. The decision was made upon the uncontroverted facts in affidavits, depositions and admissions which left no genuine issue for trial. A further distinction is apparent since the cause of plaintiffs' damage in *Zampos* was water which had accumulated in an old abandoned mine without the knowledge of the defendant. The court held the rule of strict liability did not apply since defendants had no knowledge of the water being on its property.

Neither *Gerber* nor *Zampos* has the weight defendants attribute to them in our present case.

As previously pointed out genuine issues of material fact remain to be determined by the trier of fact. The trial court erroneously determined those questions on the basis of affidavits.

The summary judgments in favor of defendants are reversed. The cases are remanded to the trial court for further proceedings in accordance with this opinion.