No. 48,538

Karl Leon Bayer, *Appellant,* v. Shupe Bros. Co., a Corporation, and Continental Insurance Company, a Corporation, *Appellees.*

(576 P.2d 1078)

Opinion filed April 1, 1978.

*J. Stephen Nyswonger,* of Braun & Nyswonger, Garden City, argued the cause, and *Lelyn J. Braun,* of the same firm, was with him on the brief for appellant.

*B. G. Larson,* of Williams, Larson, Voss, Strobel & Estes, Dodge City, argued the cause, and *Max Eugene Estes,* of the same firm, was with him on the brief for appellees.

The opinion of the court was delivered by

Holmes, J.: This is an appeal by the plaintiff from a judgment in a jury trial entered in favor of the defendant in an automobile personal injury action.

On April 5, 1972, plaintiff, Karl Leon Bayer, a 19-year-old youth, was driving his 1964 Ford Falcon automobile in a westerly direction on U.S. Highway 50 west of Garden City, enroute to his employment in Holcomb. Plaintiff testified he was driving in a careful and prudent manner within the then existing speed limit of 60 miles per hour. He observed a 30 foot "bobtail" truck belonging to the defendant, Shupe Bros., approaching the highway from a private driveway. The truck entered the highway from the south and turned west on Highway 50 in front of plaintiff. Plaintiff contends the truck entered the highway without stopping, thus creating an emergency situation in which plaintiff immediately applied his brakes and swerved to the south to avoid hitting the truck. Plaintiff lost control of his vehicle, hit a culvert and then turned end over end in the south barrow ditch of the highway. Plaintiff suffered serious permanent injuries.

Defendants admit an accident occurred and that the Shupe Bros. truck was being driven by an employee, Robert Heinz, in the course of his employment. Defendants specifically deny that the injuries or damages incurred by plaintiff were caused by any act of negligence or want of care upon the part of Heinz. They specifically contend that Heinz stopped before entering the intersection, looked in both directions, observed there was no approaching traffic close enough to constitute a hazard and at the time he pulled upon the highway plaintiff's vehicle was so far distant that had it been driven at a proper speed there would have been no danger or emergency involved. Several witnesses testified as to plaintiff's speed, which was a critical issue in the trial. Plaintiff presented his case throughout the trial on the theory that he had been caught in a sudden emergency situation created by the defendant.

The case was presented to the jury and the following special questions were submitted by the trial court:

"1. Were the defendants guilty of any act of negligence as contended by the plaintiff and set out in Instruction No. 2 which was a proximate cause of the collision herein?
Answer:_____

IF YOU HAVE ANSWERED QUESTION NO. 1 "NO", DO NOT ANSWER THE REMAINING QUESTIONS.

2. If you have answered Question No. 1 "Yes", state the act or acts of negligence.
Answer:_____

3. Was the plaintiff guilty of any act of contributory negligence as contended by the defendants and set out in Instruction No. 2 which was a proximate cause of the collision herein?
Answer:_____

4. If you have answered Question No. 3 "Yes", state the act or acts of contributory negligence.
Answer:_____

IF YOU HAVE ANSWERED QUESTION NO. 3 "YES", AND HAVE SET OUT THE SPECIFIC ACT OR ACTS OF CONTRIBUTORY NEGLIGENCE IN YOUR ANSWER TO QUESTION NO. 4, DO NOT ANSWER QUESTION NO. 5.

5. What amount, if any, do you allow to the plaintiff for his damages?
Answer: $_____"

After deliberating for some time the foreman of the jury advised the court it could not agree upon answers to the first two questions but could answer questions three and four as follows:

3. Answer: Yes.

4. Answer: Failing to observe the approach of the defendant's vehicle and its entry upon the highway and stop or turn aside to avoid an emergency situation.

Plaintiff's first point on appeal is the trial court committed error in refusing to give a requested emergency instruction in accordance with PIK 8.81. Plaintiff's theory in the pleadings, pretrial order and trial was based upon the existence of a sudden emergency created by the defendants' driver. He argues his entire theory of recovery was frustrated by the failure of the trial court to give the requested instruction.

The sudden emergency doctrine is only applicable to one who acted in an emergency not of his own making.

"The rule of 'sudden emergency' may not be invoked by one who brought the emergency upon himself by his wrong or who did not use due care to avoid it." *Hallet v. Stone,* 216 Kan. 568, Syl. ¶ 5, 534 P.2d 232 (1975) See also *Abston v. Medora Grain, Inc.,* 206 Kan. 727, 482 P.2d 692 (1971); *Gardner v. Welk,* 193 Kan. 445, 393 P.2d 1019 (1964).

Without going into detail, the record in this case shows sufficient evidence from which the jury could have found that plaintiff brought the emergency upon himself. While the jury could not agree as to any act of negligence by defendants' driver, it did find the plaintiff guilty of negligence in failing to observe the approach and entry upon the highway of the defendants' vehicle and in plaintiff's failure to stop or turn aside to avoid an emergency.

We have said in numerous cases that ordinarily the better practice is not to give a sudden emergency instruction. *Hallett v. Stone,* supra; *Zell v. Luthy,* 216 Kan. 697, 533 P.2d 1298 (1975); *Mesecher v. Cropp,* 213 Kan. 695, 518 P.2d 504 (1974); *Lawrence v. Deemy,* 204 Kan. 299, 461 P.2d 770 (1969).

"The doctrine of sudden emergency cannot be regarded as something apart from and unrelated to the fundamental rule that everyone is under a duty to exercise ordinary care under the circumstances to avoid injury to others. A claim of emergency is but a denial of negligence. Application of the doctrine is really application of the test for negligence couched in language tailored to a peculiar situation. The fact that a person is confronted with a sudden emergency not caused by his own tortious conduct which requires rapid decision is merely a factor in determining the reasonable character of his choice of action and whether his conduct constituted negligence. (Restatement of Torts § 296.) Thus, if one confronted with a sudden emergency conducts himself as a reasonably careful person would when confronted by a like emergency, he is not liable for the injury.

The arising of the emergency does not relieve one from the obligation of exercising ordinary care. By the same token, a person cannot invoke the emergency rule if he brought the emergency upon himself by his own fault or did not use ordinary care to avoid it." *Lawrence v. Deemy,* supra, at 303.

The PIK Committee recommends that no instruction be given on the doctrine of sudden emergency. PIK 2d 8.81. The doctrine of sudden emergency is properly one for argument by counsel and in the instant case all issues were adequately presented to the jury in the court's instructions. We find no error in the refusal to give the instruction requested by plaintiff.

Plaintiff's other points on appeal all have to do with the answers to the special questions and the entry of judgment for the defendants by the trial court. Plaintiff contends it was error for the court to accept the jury's answers to questions 3 and 4 without requiring answers to questions 1 and 2; that the answers to questions 3 and 4 were contrary to the evidence and that it was error for the trial court to enter a judgment for the defendants based upon the answers to questions 3 and 4.

The accident in this case occurred prior to the enactment of our comparative negligence statute. Thus, negligence or contributory negligence of plaintiff would bar his recovery. The one issue the jury could agree upon was that the plaintiff was negligent and his negligence was a proximate cause of the accident. Having reached that conclusion it would have served no useful purpose to require the jury to attempt to reach agreement on answers to the other questions. Regardless of what answers might have been given to questions 1 and 2, the answers already obtained constituted a bar to plaintiff's recovery.

Plaintiff argues that to allow answers to only part of the questions and the entry of a judgment based thereon was in violation of the pretrial order which specified the questions to be submitted to the jury. Plaintiff contends that the court, in effect, modified the pretrial order by accepting a general verdict rather than a special verdict based upon answers to all four questions. We do not view the entry of judgment by the trial court as being a modification of the pretrial order but even if it were, it would be within the sound discretion of the trial court. (See *Tillotson v. Abbott,* 205 Kan. 706, 472 P.2d 240 [1970].)

Finally, plaintiff contends the answers to the special questions were not supported by the evidence. While it is true the defendants' principal defense was based upon showing excessive speed

by plaintiff, this was not the sole factor which could have been considered as creating the emergency situation in which plaintiff found himself. There was evidence that plaintiff's car was one-half mile to the east at the time defendants' truck was entering upon the highway. If believed, such evidence could adequately support the jury's determination that plaintiff did not keep a proper lookout.

We find no error by the trial court in its acceptance of the jury's answers to only two of the special questions and in the entry of a judgment based upon those answers.

The judgment is affirmed.

MILLER, J., dissenting: I am dissatisfied with the disposition of this case, and must respectfully dissent.

"Special questions" were the bane of trial counsel, judges, juries, and this court from statehood until 1964, when our present Rules of Civil Procedure became effective. Prior enactments permitted a party to request as a matter of right—and required the trial judge to give—up to ten special questions. See G.S. 1949, 60-2918. For a listing of the hundreds of Kansas cases grappling with the myriad problems created by special questions and special verdicts, see 9A West's Kansas Digest, Trial, §§ 346-366, inclusive. The Rules of Civil Procedure leave special questions to the discretion of the trial judge. K.S.A. 60-249; and see Gard's Kansas C.C.P. § 249, pp. 229-232. We have had few cases involving special questions, such as those propounded to this trial jury, since 1964, because such detailed questioning of juries has become the rare exception and not the rule, and properly so.

This trial jury had two basic choices. It could believe the plaintiff and find from the evidence that the truck ran a stop sign directly in front of the plaintiff, who was proceeding in a lawful manner, and it could have returned a verdict for the plaintiff in the amount of his damages. Or it could believe the defendant's truck driver and find from the evidence that the truck lawfully entered the highway while plaintiff was yet a long ways away, and that plaintiff was driving at a greatly excessive and unlawful speed, and brought about the catastrophe, in which case the jury could have returned a verdict for the defendant. This was a usual run-of-the-mill negligence case so far as liability was concerned, and it should have been submitted on a general verdict. None was given.

Instead, the special questions set out in the majority opinion were given.

The jury found that the plaintiff failed to *see* the truck approach and enter the highway, and that he failed to *turn aside*—when *all* of the evidence was to the contrary! He *saw* the truck, and he *swerved* to the left to avoid colliding with it.

The jury did *not* find that the plaintiff was driving at an excessive speed. It is fundamental that a verdict which finds that a person committed specific acts of negligence exonerates and absolves the person of all other acts of negligence which were charged against him. *Martin v. State Highway Commission,* 213 Kan. 877, 518 P.2d 437 (1974); *Hubbard v. Havlik,* 213 Kan. 594, 518 P.2d 352 (1974); *Abston v. Medora Grain, Inc.,* 206 Kan. 727, 482 P.2d 692 (1971); *Cole v. Shell Petroleum Corp.,* 149 Kan. 25, 86 P.2d 740 (1939).

Also, the jury did *not* return a verdict for the defendants—because no general verdict was submitted to it. We do not, therefore, have a finding generally in favor of the defendants and against the plaintiff.

The defense was excessive speed, not lookout, and on that basis was the case tried. In order to affirm the judgment entered below, it seems to me that the majority has weighed the evidence and has decided that the more persuasive evidence is that of the *defendant,* and that this court has made findings of fact—without labeling them as such—that the plaintiff really was a half-mile away, careening toward the defendant's truck at a grossly excessive rate of speed, when the truck carefully entered the highway, and that such "facts" support the jury's finding of failure to look and stop or turn aside. This court should not make findings of fact, particularly on such contradictory and disparate evidence as is presented by this record. I think the parties are entitled to have this case decided by a jury, on the evidence and on the theories upon which the case was tried.

I respectfully suggest that this judgment should be reversed and this case should be remanded for a new trial, with directions to submit general verdicts only to the jury upon retrial.

Owsley, J., joins in dissent.